## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANGELINA SHOWERS, an individual,
on behalf of herself and all others
similarly situated,

                  Plaintiffs,

    v.

PELICAN INVESTMENT HOLDINGS
GROUP, LLC, a Delaware Limited
Liability Company, d/b/a AAP and
AUTO SERVICE DEPARTMENT;
DIMENSION SERVICE CORPORATION,
an Ohio Corporation; SUNPATH, LTD,
a Delaware Corporation; and SING For
Service, LLC d/b/a MEPCO, an Illinois
Limited Liability Company

                  Defendants.

**CASE NO: 3:23-CV-02864-NJR**

**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**

**1) VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227; AND**

**2) VIOLATIONS OF THE ILLINOIS TELEPHONE SOLICITATIONS ACT 815 ILCS 413/**

**DEMAND FOR JURY TRIAL**

Plaintiff ANGELINA SHOWERS ("Plaintiff"), on behalf of herself and all others similarly situated, complains and alleges of Defendants PELICAN INVESTMENT HOLDINGS GROUP, LLC, a Delaware Limited Liability Company, d/b/a AUTO SERVICE DEPARTMENT ("Pelican"); DIMENSION SERVICE CORPORATION, an Ohio Corporation ("Dimension"); SUNPATH, LTD, a Delaware Corporation ("SunPath"); and SING FOR SERVICE, LLC d/b/a MEPCO a Delaware Limited Liability Company ("MEPCO"); and DOES 1-50 (collectively "Defendants") as follows:

1

# I.

## INTRODUCTION

1.      This action is brought on behalf of all consumers who have received unsolicited telephone calls on their cellular telephones and landline telephones from Defendants, in violation of the Federal Telephone Consumer Protection Act and Illinois' Telephone Solicitations Act.

# II.

## JURISDICTION & VENUE

2.      Defendants, and each of them, are business entities who conduct substantial business in Illinois, including the County of Madison, who have caused both the respective obligations and liabilities of Defendants to arise in the County of Madison. Further, Plaintiff is a citizen of the County of Madison. All Defendants not only availed and continue to avail themselves to Illinois' Jurisdiction, they aggressively invaded the lives and peaceful tranquility of thousands of Illinois Consumers in doing so.

3.      The amount in controversy exceeds the jurisdictional minimum of this Court.

4.      Pelican Investment Holding Group, LLC, removed this Class Action from the Third Judicial Circuit Court for Madison County, Illinois, to this District Court on August 18, 2023 pursuant to 28 U.S.C. §§ 1331 and 1441, initiating the case in this Venue. Venue is also proper in this jurisdiction for TCPA claims pursuant to 47 U.S.C. §§ 227 (b)(3)(A-C).

# III.

## THE PARTIES

### A.      Plaintiffs

5.      Plaintiff Angelina Showers ("Plaintiff Showers") is a resident of the County of Madison, in the State of Illinois, who, during the relevant Class Period, received multiple unsolicited and un-consented to telephone solicitation calls on her telephone line used for

2

residential purposes, with number ending in 2903, from Defendants (through Pelican acting on behalf of all Defendants), including on or about August 4 and 5, 2022; and was solicited to pay money, and did pay money, to Defendants over the phone without express written consent. Plaintiff Showers' telephone number is included on the National Do Not Call Registry, and has been so registered since January 12, 2006.

### B.    Defendants

6.    Defendant Pelican is a Delaware Limited Liability Company, with its principal place of business, head office, or otherwise valid mailing address at 1300 Old Congress Rd, West Palm Beach, FL 33409. Pelican holds itself out to the public as "AAP" and "AUTO SERVICE DEPARTMENT." Pelican also conducts significant operations out of California from an address at 555 N. Park Drive, Suite 200, Santa Ana, CA 92705.

7.    Defendant Dimension is an Ohio Corporation, with its principal place of business, head office, or otherwise valid mailing address at 5500 Frantz Road, Suite 120, Dublin, OH 43017.

8.    Defendant SunPath, LTD is a Delaware Corporation, with its principal place of business, head office, or otherwise valid mailing address at 50 Braintree Hill Park, Suite 310, Braintree, MA 02184.

9.    Defendant MEPCO is an Illinois Limited Liability Company with its principal place of business, head office, or otherwise valid mailing address at 205 N. Michigan Avenue, Suite 2200, Chicago, IL 60601.

### C.    Agency and Aiding and Abetting Relationship of Defendants

10.    Plaintiffs are informed and believe, and based thereon allege, that all Defendants were at all relevant times acting as actual agents, conspirators, ostensible agents, partners, joint ventures, direct contractors and/or employees of all other Defendants, acting in contract and

concert, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permissions, knowledge, consent, authorization and ratification of their Co-Defendants.

11.     Defendants are liable for each others' acts based on ordinary vicarious liability principals. Defendants Dimension and SunPath conspired to create the common scheme of selling Vehicle Service Contracts ("VSC") across the country, whereby both acted as administrators for the VSC scheme. Defendants conspired to engage in an aggressive automated telephone solicitation calling campaign whereby Defendants would blanket the country, including Illinois residents, with unsolicited VSC sales calls initiated through Pelican, including calls to people on the National Do Not Call Registry. Pelican acted as an Agent for all Defendants in carrying out the illegal telephone calling scheme.

12.     Defendants conspired for MEPCO to act as an Agent to process payments to finance the consumers' VSC policy monthly insurance premium payments. MEPCO did in fact process the payments from consumers who fell victim to this common scheme through the illegal telephone calling campaign, including payments from Plaintiff and the Class.

13.     All Defendants acted in concert and had full knowledge of the calling campaign, ratified it, and profited from it. All Defendants are liable for the violations of law alleged herein through the participation of all Defendants acting in concert to facilitate the common scheme.

## IV.

## GENERAL ALLEGATIONS

### A.    Governing Law

14.     In 1991, Congress enacted the Telephone Consumer Protection Act, "TCPA," 47 U.S.C. section 227 in response to a growing number of consumer complaints regarding telemarketing practices. The TCPA regulations promulgated by the FCC define "telemarketing"

as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).

15.    The TCPA regulates, among other items, a prohibition of calling persons on the National Do Not Call Registry without prior consent; as well as the use of automated telephone equipment, also known as "autodialers." The language of section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the dialed party. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."

16.    Telephone solicitation calls without prior consent are prohibited because these types of calls are a nuisance and invasion of privacy, especially after a consumer affirmatively registers on the National Do Not Call Registry. Further, such calls can be costly and inconvenient.

17.    The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. The FCC posts on its website a Consumer Guide warning consumers to "Watch out for Auto Warranty Scams" stating:

> If you own a vehicle and a phone, you may receive calls from scammers posing as representatives of a car dealer, manufacturer or insurer telling you that your auto warranty or insurance is about to expire. The call will include some sort of pitch for renewing your warranty or policy.
>
> During the call – which often begins automated or pre-recorded – you may be instructed to press a certain number or stay on the line, then asked to provide personal information, which potentially can be used to defraud you.
>
> What makes it particularly hard to discern if this type of call is fraudulent is that the scammer may have specific information about your particular car and warranty that they use to deceive you into thinking they are a legitimate caller.
>
> (https://www.fcc.gov/consumers/guides/beware-auto-warranty-scams)

**B.    Factual Allegations**

18.    During the relevant limitations period, Defendants (through Pelican acting on behalf of all Defendants through a common scheme) placed telephone calls to Plaintiff and the Class Members' which telephone calls included the solicitation and sale of Vehicle Service Contracts ("VSCs") (marketed by Defendants as "Automobile Extended Warranties") constituting telemarketing. Plaintiffs allege on information and belief that the calls to Plaintiff's telephone were initiated by Pelican using an automatic telephone dialing system.

19.    Defendants did not obtain Plaintiff's prior express written consent before initiating the calls to Plaintiff's telephone. Plaintiffs are informed and believe that as part of Defendants' scheme, consent forms were retroactively populated to create the appearance of prior consent despite the lack of such prior consent. At no time either before or after the illegal telephone calls did Plaintiff or the Class members knowingly give either proactive or retroactive consent.

20.    Defendants utilized Pelican as their agent to sell the VSCs through illegal telephone solicitations and aggressive sales tactics, insisting that the consumer must make a decision before they get off the phone call or they will lose the opportunity. Defendants then mandate an initial monetary payment from the consumer over the phone prior to sending any written detail regarding the VSCs.

21.    The telephone solicitation calls begin with a live operator informing the consumer that he/she is eligible for an extended warranty on his/her vehicle. The live operator does not immediately state his or her name, nor the name of the business or organization being represented. The operator also misrepresents the purpose of the call in light of the fact that Defendants represent that they are selling "Extended Warranties" when they are not, and are instead selling VSCs.

22.    After allegedly confirming the initial information in Defendants' records, the consumer is then transferred to a "closer" (at one of Pelican's domestic call centers) on the VSC

sale. Defendants offer the "Extended Warranty Policy" insisting that the consumer must make a decision before they get off the phone call or they will lose the opportunity because Defendants say they will not call the consumer back.

23.    Defendants then explain that the "Coverage" is the highest level of protection available based on the age and mileage of the vehicle; and that "Coverage" means "Full Coverage for the entire vehicle front to back and top to bottom" and includes coverage on "All Big Ticket Items" such as: (1) "Engine and Transmission;" (2) "Electrical and Computer"; (3) "Heating and Air Conditioning;" (4) "Suspension and Braking Systems;" and (5) "Drive Axels and Steering;" as well as "Even Smaller Electrical Items" such as: (6) "Alternator and Starter, all the way down to the Power Windows and Stereo."

24.    Defendants also state that in addition to the "Extend Warranty" provided, "also included for peace of mind with the policy is towing and 24-hour emergency roadside assistance as a free benefit that comes with the coverage."  In other words, towing and roadside assistance are incidental to the VSC and its "Full Coverage" extended warranty policy.

25.    Defendants finish their VSC sale by offering financing options and mandating that the consumer make an initial monetary payment over the phone prior to sending or agreeing to any written documentation. Plaintiff and members of the Class made payments to Defendants over the phone, consummating the contractual relationship, without receiving any prior documentation. These initial down payments are initially processed and collected by Pelican, but all subsequent payments by Plaintiffs and the Class were processed and collected by MEPCO.

26.    Pelican took payments directly from Plaintiff Showers over the phone during the solicitation sales calls to her, without obtaining prior written consent, in August, 2022, collecting "down payments" by credit card and/or bank card payments over the phone.

27.     After receiving the consumer's money, Defendants send a link to the consumer "for Policy confirmation" at "http://vsc-confirmation.com" which confirms the completed purchase of an "Extended Service Protection" Policy with a "Certificate of Coverage" forthcoming, and lists the "Important Benefits of the Policy," such as "Pays repair facility directly," "Transferable coverage," "Low deductible options," and "Protects your financial investment." The Defendants then also state that "Rental and Towing options available on most plans."

28.     Defendants ultimately mail a purported "Service Contract" document to the consumer which are not signed by Defendants or by the consumers; and are not necessary for the purchase contract which has already been confirmed with payment for the issuance of the "Extended Warranty Policy."

29.     Defendants made the unsolicited, automated and deceptive telephone calls in an attempt to obtain money from Plaintiff and the Class, and in fact were successful in obtaining payments from Plaintiff, including during the illegal telephone calls in the form of down payments on Vehicle Service Contracts.

30.     In furtherance of the common scheme by all Defendants, and as a direct result of the illegal telephone solicitations, MEPCO collected monthly payments from consumers for the benefit and profit of all Defendants in furtherance of the illegal scheme.

## V.

## CLASS ACTION ALLEGATIONS

31.     Plaintiff brings this lawsuit as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The following nationwide Class and Illinois Subclass may properly be maintained as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure Plaintiff is a member of both the nationwide Class and the Illinois Subclass.

32.     Plaintiff seeks to represent a nationwide Class of "all natural persons in the United States of America who, during the applicable statute of limitations, received a telephone call from Defendants that: (1) was initiated to a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government; and (2) was initiated at a time when the called party had not given Defendants prior express consent for such calls."

33.     Plaintiffs seek to represent an Illinois Subclass of "all natural persons in the State of Illinois who, during the applicable statute of limitations, received a telephone call from Defendants wherein: (1) the live operator did not immediately state his or her name, nor the name of the business or organization being represented; (2) the live operator represented that they were soliciting "Extended Warranties;" and/or (3) the consumer made payment over the telephone without providing express written consent for the payment."

34.     Excluded from the Class and Subclass are Defendants, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

35.     This action has been brought and may properly be maintained as a class action because there is a well-defined community of interest in the litigation:

a. ***Numerosity:*** The Class and Subclass are so numerous that joinder of all members is impractical. Because Defendants operate large nationwide telemarketing schemes for the sale of Vehicle Service Contracts they have made thousands of illegal calls, including thousands of calls to Illinois consumers, establishing numerous members of the Class.

9

b. ***Ascertainability:*** The identities of the Class and Subclass members are ascertainable from Defendants' records.

c. ***Common Questions Predominate:*** There are questions of law and fact common to the Class and Subclass, which questions predominate over any questions affecting only individual members. The principal issues include, *inter alia*:

    i.  Whether Defendants negligently caused violations of the Telephone Consumer Protection Act, 47 U.S.C. section 227, when telemarketing to Plaintiffs and the Class;

    ii.  Whether Defendants willfully caused violations of the Telephone Consumer Protection Act, 47 U.S.C. section 227, when telemarketing to Plaintiffs and the Class;

    iii.  Whether Defendants used an automatic telephone dialing system to call Plaintiff and the Class;

    iv.  The legality of Defendants' policies and procedures for obtaining prior express consent from its customers to place calls to their cellular telephones;

    v.  Whether the agents of Defendants, during the telephone solicitations, immediately state his or her name, and the name of the business or organization being represented;

    vi.  Whether Defendants represent during the telephone solicitations that Defendants were soliciting "Extended Warranties;"

    vii.  Whether Defendants obtained payment over the telephone from Plaintiff and the Class members without providing express written consent for the payment.

     viii.  Whether Defendants knowingly and willfully violated 815 ILCS 413/ of the Illinois Telephone Solicitations Act as to the Subclass.

     ix.  Whether Defendants' telephone calls include an advertisement and/or constitute telemarketing and/or telephone solicitations;

     x.  Whether Plaintiffs and the Class and Subclass are entitled to damages for Defendants' actions; and

     xi.  Whether Defendants should be enjoined from engaging in such conduct in the future.

d.  *Typicality:* Based on the conduct described above, Plaintiff's claims are typical of the claims of the members of the Class and the Subclass.  Plaintiff and all members of the Class and the Subclass have similar claims and remedies arising out of Defendants' common course of conduct complained of herein.

e.  *Adequacy:*  Plaintiff will fairly and adequately protect the interests of the members of the Class and the Subclass.  Plaintiff is committed to vigorously litigating this matter, and have retained counsel experienced in handling class claims.  Neither Plaintiff nor Plaintiff's counsel have any irreconcilable conflicting interests that might cause them not to vigorously pursue this claim.

f.  *Superiority:*  A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendants to comply with the law. Management of these claims is likely to present significantly fewer difficulties than those presented in numerous individual claims. A class action is superior to other available means for the fair and efficient adjudication of this controversy since individual joinder of all members would be impracticable.  Class

11

action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, since individual member's claims for damages are relatively modest, the expenses and burdens of litigating individual actions would make it difficult or impossible for individual members of the Class to redress the wrongs done to them. An important public interest will be served by addressing the matter as a class action, substantial economies to the litigants and to the judicial system will be realized, and the potential for inconsistent or contradictory adjudications will be avoided.

**VI.**

**FIRST CAUSE OF ACTION**
**Violations of Telephone Consumer Protection Act**
**47 U.S.C. Section 227, et seq.**

***(Calling Telephone Numbers on Do Not Call Registry)***

36.     Plaintiff, on behalf of herself and all others similarly situated, realleges each and every preceding paragraph of this Class Action Complaint as if fully set forth herein.

37.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

38.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

12

39.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

40.     Defendants do not have a "Do Not Call" database, and do not have a "Do Not Call" policy that is written or in compliance with the National Do Not Call Registry.

41.     Defendants do not scrub their call lists against the National Do Not Call list or registry.

42.     Rather, in violation of 47 C.F.R. § 64.1200(c), Defendants routinely make calls to individuals, including members of the Class, that have listed their telephone numbers on the National Do Not Call Registry.

43.     The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. section 227 et. seq. As a result of Defendants' violations of 47 U.S.C. section 227 et. seq., Plaintiff and Class members are entitled to an award of $500.00 in statutory damages for each and every call in violation of statute, pursuant to 47 U.S.C. section 227(b)(3)(B).

44.     The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. section 227 et. seq.

45.     Each of these violations was a willful and knowing violation of the law and makes Defendants liable for treble damages for each such violation in the amount of $1,500.00 per call.

46.     Plaintiffs and Class Members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future.

WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

## VII.

## SECOND CAUSE OF ACTION
### Violations of The Illinois Telephone Solicitations Act
### 815 ILCS 413/

### (The Illinois Subclass Against All Defendants)

47.     Plaintiff, on behalf of herself and all other Illinois consumers similarly situated, realleges each and every preceding paragraph of this Class Action Complaint on behalf of the Illinois Subclass as if fully set forth herein.

48.     815 ILCS 413/15(b) provides that:

"(b) A live operator soliciting the sale of goods or services shall:

(1) immediately state his or her name, the name of the business or organization being represented, and the purpose of the call; and

(2) inquire at the beginning of the call whether the person called consents to the solicitation; and

(3) if the person called requests to be taken off the contact list of the business or organization, the operator must refrain from calling that person again and take all steps necessary to have that person's name and telephone number removed from the contact records of the business or organization so that the person will not be contacted again by the business or organization. Compliance with Section 310.4(b) of the Federal Trade Commission's Telemarketing Sales Rule shall constitute compliance with this subsection (b)(3) of this Section.

(c) A person may not solicit the sale of goods or services by telephone in a manner that impedes the function of any caller ID when the telephone solicitor's service or equipment is capable of allowing the display of the solicitor's telephone number."

14

49.     815 ILCS 413/25(b) provides that: "It is a violation of this Act to continue with a solicitation placed by a live operator without the consent of the called party."

50.     815 ILCS 413/25(c) provides that: "It is an unlawful act or practice and a violation of this Act for any person engaged in telephone solicitation to obtain or submit for payment a check, draft, or other form of negotiable paper drawn on a person's checking, savings, or other account or on a bond without the person's express written consent."

51.     Defendants initiated and continued unsolicited calls to Plaintiff and Members of the Illinois Subclass wherein (1) the live operator did not immediately state his or her name, nor the name of the business or organization being represented; (2) the live operator represented that they were soliciting "Extended Warranties;" and (3) the consumer made payment over the telephone without providing express written consent for the payment."

52.     The foregoing acts and omissions of Defendants constitute numerous violations of the 815 ILCS 413.

WHEREFORE, Plaintiffs and the Class pray for relief as set forth below.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, on behalf of herself and all others similarly situated, Plaintiff demands judgment against Defendants and prays that this Court do the following:

1.     That an order certifying the Class and Subclass defined herein be entered designating Plaintiff as the representative of said Class and Subclass, and appointing Plaintiff's attorneys as Class Counsel;

2.     For statutory damages;

3.     For injunctive relief against Defendants under each cause of action;

4.     For actual damages in an amount according to proof;

5.     For other equitable relief;

6.     For attorneys' fees as provided by law;

7.     For prejudgment interest as provided by law;

8.     For costs of suit; and

9.     For such other and further relief as this Court deems just and equitable.


DATED: September 7, 2023          Respectfully Submitted,

**STONEBARGER LAW, APC**

By:  */s/ Gene J. Stonebarger*
    Gene J. Stonebarger *(pro hac vice)*
    101 Parkshore Dr., Suite 100
    Folsom, California 95630
    Telephone: (916) 235-7140
    gstonebarger@stonebargerlaw.com

    Michael E. Vinding *(pro hac vice)*
    **BRADY & VINDING**
    455 Capitol Mall, Suite 220
    Sacramento , CA 95814
    Telephone: (916) 446-3400
    mvinding@bradyvinding.com

    Leigh M. Perica (IL Bar #6316856)
    Derek Y. Brandt (IL Bar #6228895)
    **MCCUNE LAW GROUP, MCCUNE WRIGHT**
    **AREVALO VERCOSKI KUSEL WECK**
    **BRANDT, APC**
    231 North Main Street, Suite 20
    Edwardsville, IL 62025
    Telephone: (618) 307-6116
    lmp@mccunewright.com
    dyb@mccunewright.com

    *Attorneys for Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 7, 2023, I electronically filed the foregoing First Amended Class Action Complaint with the Clerk of Court using the CM/ECF system which will send notification of such filings to all counsel of record in this action.


By: *<u>/s/ Gene J. Stonebarger</u>*
Gene J. Stonebarger

*Attorneys for Plaintiff and the Class*