IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANGELINA SHOWERS,
on behalf of her herself and all others
similarly situated,

        **Plaintiff,**

v.                         Case No. 3:23-CV-2864-NJR

PELICAN INVESTMENT HOLDINGS
GROUP, LLC, DIMENSION SERVICE
CORPORATION, SUNPATH, LTD,
SING FOR SERVICE, LLC,

        **Defendants.**

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Angelina Showers brings this action on behalf of all consumers who received unsolicited telephone calls on their cellular and landline telephones from Defendants Pelican Investment Holdings Group, LLC, Dimension Service Corporation, SunPath, LTD, and Sing For Service, LLC. (Doc. 25). Showers alleges Defendants acted together to engage in an automated solicitation calling campaign to sell Vehicle Service Contracts ("VSC") across the country, including to people on the National Do-Not-Call registry, in violation of the Federal Telephone Consumer Protection Act ("TCPA") and the Illinois Telephone Solicitations Act ("ITSA"). (*Id.*).

Defendants have moved to dismiss the Amended Complaint under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. (Docs. 29, 30, 33, 34). Defendants also have moved to strike Showers's class action allegations. (*Id.*). For the reasons set forth

below, the motions to dismiss are granted in part and denied in part. The motions to strike are denied.

BACKGROUND

The following facts are taken from the First Amended Complaint (Doc. 25), and the Court accepts them as true when considering Defendants' motions to dismiss.

Plaintiff Angelina Showers has maintained her residential phone number on the National Do-Not-Call Registry since January 12, 2006. (*Id.* at ¶ 5). Nevertheless, on August 4 and 5, 2022, Showers received multiple unsolicited phone calls from Pelican Investment Holdings Group, LLC ("Pelican"). (*Id.*). Pelican holds itself out to the public as "AAP" and "Auto Service Department" and called Showers and others to sell VSCs using an automatic telephone dialing system. (*Id.* at ¶¶ 6, 18). The VSCs were marketed as "Automobile Extended Warranties." (*Id.* at ¶ 18). Showers claims Pelican used aggressive sales tactics, insisting that the consumer must decide whether to buy the extended warranty before they get off the phone call or they will lose the opportunity. (*Id.* at ¶ 20). Pelican then requires an initial monetary payment from the consumer over the phone prior to sending any written detail regarding the VSCs. (*Id.*).

Showers claims the calls were part of a scheme created by Defendants Dimension Service Corporation ("Dimension") and SunPath LTD ("SunPath") to sell VSCs across the country and that both Dimension and SunPath were administrators for the VSC scheme. (*Id.* at ¶ 11). Pelican acted as an agent for all Defendants by carrying out the illegal telephone calling scheme. (*Id.*). And Sing for Service, LLC, doing business as Mepco ("Mepco"), processed the consumers' VSC policy monthly premiums. (*Id.* at ¶ 12).

Showers alleges that Defendants did not obtain her prior express written consent before initiating the calls to her telephone. (*Id.* at ¶ 19). As part of the scheme, consent forms were retroactively populated to create the appearance of prior consent despite the lack of such prior consent. (*Id.*). At no time either before or after the illegal telephone calls did Showers or the Class members knowingly give either proactive or retroactive consent. (*Id.*).

During the phone calls, the live operator informs the consumers that they are eligible for an extended warranty on his or her vehicle. (*Id.* at ¶ 21). The operator does not immediately state his or her name, nor the name of the business being represented. (*Id.*). The operator also misrepresents the purpose of the call; Defendants claim to be selling extended warranties when they are actually selling VSCs. (*Id.*). After transferring the consumer to a "closer" at one of Pelican's domestic call centers, Defendants explain the coverage and offer financing options. (*Id.* at ¶ 22-25).

Pelican took payments directly from Showers over the phone during the solicitation sales calls to her in August 2022, collecting "down payments" by credit or debit card over the phone. (*Id.* at ¶ 26). Showers asserts Defendants made these unsolicited, automated, and deceptive telephone calls in an attempt to obtain money from her and the Class, and in fact were successful in obtaining payments during the illegal telephone calls in the form of down payments on VSCs. (*Id.* at ¶ 26). And, Mepco collected monthly payments from consumers for the benefit and profit of all Defendants in furtherance of the illegal scheme. (*Id.* at ¶ 30).

Showers filed this action on August 18, 2023 (Doc. 1), and later amended her

complaint on September 7, 2023. (Doc. 25). Showers seeks to represent a nationwide Class of "all natural persons in the United States of America who, during the applicable statute of limitations, received a telephone call from Defendants that: (1) was initiated to a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government; and (2) was initiated at a time when the called party had not given Defendants prior express consent for such calls." (*Id.* at ¶ 32).

Showers also seeks to represent an Illinois Subclass of "all natural persons in the State of Illinois who, during the applicable statute of limitations, received a telephone call from Defendants wherein: (1) the live operator did not immediately state his or her name, nor the name of the business or organization being represented; (2) the live operator represented that they were soliciting "Extended Warranties;" and/or (3) the consumer made payment over the telephone without providing express written consent for the payment." (*Id.* at ¶ 33).

## LEGAL STANDARDS

### A.      Federal Rule of Civil Procedure 12(b)(2)

When personal jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of making a prima facie case that jurisdiction exists. *B.D. by & through Myer v. Samsung SDI Co.*, 91 F.4th 856, 860 (7th Cir. 2024); *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). If there are material facts in dispute regarding the Court's jurisdiction, the Court must hold an evidentiary hearing at which the plaintiff must establish jurisdiction by a preponderance

of the evidence. *Purdue Research*, 338 F.3d at 782 (citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). Alternatively, the Court may decide the motion to dismiss without a hearing based on the submitted written materials so long as it resolves all factual disputes in the plaintiff's favor. *Purdue Research*, 338 F.3d at 782; *see also Curry v. Revolutions Labs., LLC*, 949 F.3d 385, 392 (7th Cir. 2020). If the Court consults only the written materials, the plaintiff need only make a prima facie showing of personal jurisdiction. *Id.*

### B.     Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). The Court accepts as true the complaint's well-pleaded factual allegations and draws all reasonable inferences—but not legal conclusions—in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 504 (7th Cir. 2013).

To survive a Rule 12(b)(6) motion, the plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.* "Plausibility does not mean probability: a court reviewing a 12(b)(6) motion must 'ask itself *could* these things have happened, not *did* they happen." *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 833 (7th Cir. 2015) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010)). "The standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the

allegations." *Id.* (citing *Olson v. Champaign Cnty.*, 784 F.3d 1093, 1098 (7th Cir. 2015)); *see also Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 645 (7th Cir. 2022) ("all a complaint must do is state a plausible narrative of a legal grievance that, if proved, would entitle the plaintiff to relief").

**DISCUSSION**

## I.   Personal Jurisdiction over Defendants Dimension and SunPath

The Court first addresses its personal jurisdiction over Dimension—an Ohio corporation with its principle place of business in Ohio—and SunPath—a Delaware corporation with its principle place of business in Massachusetts.

A district court may exercise personal jurisdiction over an out-of-state defendant if "either federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Shanahan v. Nat'l Auto Prot. Corp.*, No. 1:19-CV-03788, 2020 WL 3058088, at *2 (N.D. Ill. June 9, 2020) (quoting *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston*, 623 F.3d 440, 443 (7th Cir. 2010)). Because the TCPA does not authorize nationwide service of process, Illinois law determines the limits of personal jurisdiction. *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 589 (7th Cir. 2021).

"The Illinois long-arm statute authorizes jurisdiction over a non-resident through conduct of an agent." *See* 735 ILCS 5/2-209(a). Additionally, "§ 2-209(c) provides a catch-all provision, permitting a court's exercise of jurisdiction to the full extent permitted by the Illinois and United States Constitutions." *Bilek*, 8 F.4th at 589-90 (citing 735 ILCS 5/2-209(c)). Thus, the Seventh Circuit has held that "the Illinois long-arm statute permits the exercise of personal jurisdiction to the full extent permitted by the Fourteenth

Amendment's Due Process Clause." *Id.* at 590.

The Court must determine whether it has specific jurisdiction over Dimension and SunPath, because the Court lacks general jurisdiction over these Defendants. Specific personal jurisdiction rests on "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *B.D. by & through Myer v. Samsung SDI Co.*, 91 F.4th 856, 861 (7th Cir. 2024) (quoting *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017)). "For specific personal jurisdiction, there must be: (1) purposeful availment—the defendant must have purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the forum; (2) relatedness—the alleged injury must arise out of or relate to the defendant's forum-related activities; and (3) fairness—the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *Id.*

In *Bilek*, the Seventh Circuit Court of Appeals held for the first time that the actions of an agent may be attributed to the principal to establish specific personal jurisdiction, and that this attribution comports with federal due process. *Bilek*, 8 F.4th at 590. There, the plaintiff, a citizen of Illinois, alleged that certain lead generators acted as agents for the defendant when they made illegal phone calls to him. *Id.* at 591. The plaintiff further alleged that the lead generators acted with the defendant's actual authority and that the defendant actually participated in the calls in real time by, for example providing insurance quotes. *Id.* The Seventh Circuit found these allegations sufficient to support an agency relationship on actual authority grounds at the pleading stage. *Id.* As a result, the

plaintiff had established a prima facie case of personal jurisdiction over the defendant.

Showers's allegations are not quite as detailed, but nonetheless, she has adequately pleaded an agency relationship between Pelican and both Dimension and SunPath. Showers claims that Dimension and SunPath conspired to create a common scheme of selling VSCs and acted as administrators for the scheme. She further claims that Pelican acted as an agent for Dimension and SunPath in carrying out the telephone calling scheme, and that all Defendants acted in concert, had full knowledge of the calling campaign, ratified it, and profited from it. Because there is no dispute that Pelican is subject to personal jurisdiction in Illinois, and because Showers adequately alleges an agency relationship, the Court finds that she has made a prima facie showing of personal jurisdiction over Dimension and SunPath.

## II.    Pleading Standards

Defendants Dimension, SunPath, and Pelican next argue that Showers's Amended Complaint constitutes a "shotgun pleading" that is deficient under the pleading requirements of Rule 8(a). That is, Showers has impermissibly grouped multiple defendants together and has failed to set out which defendant engaged in the wrongful conduct. Defendants assert that Showers's allegations are insufficient and prevent them from being able to adequately respond to the complaint. Along the same lines, Mepco argues that the Amended Complaint fails to meet the plausibility standard of Rule 8(a) because it makes no specific, factual allegations against Mepco. At most, she has alleged that Mepco was a payment processor. Mepco contends that it would require a leap in logic and multiple factual assumptions to find that it had any knowledge of an allegedly

unlawful calling campaign.

Under Rule 8(a), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). "To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead facts to 'state a claim that is plausible on its face.'" *Bilek*, 8 F.4th at 586 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible where a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While a plaintiff must plead enough specific facts to present a story that holds together, the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 586-87 (quoting *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 676 (7th Cir. 2016)).

"A shotgun pleading is a complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading." *Harris v. Landmark Recovery of Carmel LLC*, No. 3:23-CV-00862-CCB-SLC, 2024 WL 3636609, at *2 (N.D. Ind. Aug. 2, 2024). Shotgun pleadings often incorporate by reference all preceding paragraphs and counts of the complaint, even though many of the facts alleged are not material to each claim or cause of action. *Damian v. Courtright*, No. 21 C 1694, 2021 WL 3144447, at *4 (N.D. Ill. July 26, 2021).

The Court disagrees that the Amended Complaint is deficient under Rule 8(a) or constitutes a shotgun pleading. Showers has alleged that Defendants engaged in a scheme, acted as conspirators or in concert, and that all acts occurred within the scope of

their relationship. She then alleges that Dimension and SunPath were the principals, Pelican was an agent that carried out the phone calls, and Mepco was an agent that processed payments from consumers. The fact that Showers later refers to the parties collectively as "Defendants" is not so confusing or inarticulate that Defendants are unable to craft an answer to her claims. Showers has set forth sufficient facts to plausibly suggest that Defendants are liable for the misconduct alleged; therefore, Defendants' motions to dismiss are denied on these grounds.

### III.   Failure to State a Claim Under the TCPA

Congress passed the TCPA in 1991 to protect consumers by regulating telemarketing communications and prevent cost-shifting of advertising costs. *Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354, 356 (7th Cir. 2020); *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 371 (2012). "The TCPA prohibits any person, absent prior express consent, from making a call using an automatic system to any telephone number assigned to a cellular telephone service for which the called party is charged for the call." *Id.* (citing 47 U.S.C. § 227(b)(1)(A)(iii)). A defendant may be found both directly and vicariously responsible for TCPA violations. *Snyder v. U.S. Bank N.A.*, No. 16 C 11675, 2019 WL 3080924, at *4 (N.D. Ill. July 14, 2019).

### A. Vicarious Liability

Defendants Dimension, SunPath, and Mepco argue that direct liability under the TCPA applies only to entities that *initiate* the telemarketing calls by taking the steps necessary to physically place a telephone call, not to entities that merely play a minor role in the causal chain that results in the telephone call. Defendants also argue that Showers's

complaint is devoid of details regarding the time of the calls, the content of the calls, or what number the calls came from. Showers did not respond to these Defendants' argument regarding direct liability, and thus concedes that Dimension, SunPath, and Mepco have no direct liability.

The Court instead focuses on the vicarious liability of these Defendants. "[T]he FCC has ruled that a defendant may be held vicariously liable for violations of the TCPA 'under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification.'" *Id.* (quoting *In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6593 ¶ 28 (2013)).

Formal agency, also known as "actual authority," may be express or implied. *Id.* (citing *Bridgeview Health Care, Ltd. v. Clark*, 816 F.3d 935, 938-39 (7th Cir. 2016)). "Express authority exists when a principal expressly authorizes an agent and the agent acts on the principal's behalf and subject to the principal's control." *Warciak*, 949 F.3d at 357. To demonstrate actual authority, a plaintiff must show that "(1) a principal/agent relationship exists, (2) the principal controlled or had the right to control the alleged agent's conduct, and (3) the alleged conduct fell within the scope of the agency." *Bilek*, 8 F.4th at 587.

"To create apparent authority, the principal must speak, write, or otherwise act toward a third party." *Bridgeview*, 816 F.3d at 939. "Ratification occurs when an agent acts for a principal's benefit and the principal does not repudiate the agent's actions. *Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664, 677 (7th Cir. 2004). It "requires that the principal have full knowledge of the facts and the choice to either accept or reject the

benefit of the transaction." *NECA-IBEW Rockford Local Union 364 Health & Welfare Fund v. A&A Drug Co.*, 736 F.3d 1054, 1059 (7th Cir. 2013). "A principal can ratify an act by (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents." *Toney v. Quality Resources, Inc.*, 75 F. Supp. 3d 727, 745 (N.D. Ill. Dec. 1, 2014).

Here, Dimension, SunPath, and Mepco argue that Showers has asserted only general, conclusory, boilerplate allegations regarding vicarious liability, which is insufficient to state a claim. In the Amended Complaint, Showers alleges:

10. . . . [A]ll Defendants were at all relevant times acting as actual agents, conspirators, ostensible agents, partners, joint ventures, direct contractors and/or employees of all other Defendants, acting in contract and concert, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permissions, knowledge, consent, authorization and ratification of their Co-Defendants.

11. Defendants are liable for each others' acts based on ordinary vicarious liability principals. Defendants Dimension and SunPath conspired to create the common scheme of selling Vehicle Service Contracts ("VSC") across the country, whereby both acted as administrators for the VSC scheme. Defendants conspired to engage in an aggressive automated telephone solicitation calling campaign whereby Defendants would blanket the country, including Illinois residents, with unsolicited VSC sales calls initiated through Pelican, including calls to people on the National Do Not Call Registry. Pelican acted as an Agent for all Defendants in carrying out the illegal telephone calling scheme.

12. Defendants conspired for MEPCO to act as an Agent to process payments to finance the consumers' VSC policy monthly insurance premium payments. MEPCO did in fact process the payments from consumers who fell victim to this common scheme through the illegal telephone calling campaign, including payments from Plaintiff and the Class.

13. All Defendants acted in concert and had full knowledge of the calling

campaign, ratified it, and profited from it. All Defendants are liable for the
violations of law alleged herein through the participation of all Defendants
acting in concert to facilitate the common scheme.

(Doc. 25 at ¶¶ 10-13).

While these allegations are not the model of specificity, the Court finds them
sufficient to state a plausible claim for relief under the TCPA through the theory of
vicarious liability. *See Bilek*, 8 F.4th at 587 ("[A]llegations of minute details of the parties'
business relationship are not required to allege a plausible agency claim."). The
allegations here create an inference that Dimension and SunPath, acting as principals,
created a scheme to sell VSCs through automated telephone solicitation. Pelican, acting
as an agent, made the unsolicited phone calls, including to people on the National Do-
Not-Call Registry. Mepco then acted as a principal and/or agent by processing monthly
payments from consumers who purchased a VSC. It is also plausible to infer from the
allegations in the Amended Complaint that Mepco ratified its co-defendants' conduct
when it continued to collect monthly payments from consumers that purchased a VSC as
a result of the alleged illegal scheme.

As the Seventh Circuit noted in *Bilek*, whether an agency relationship exists is
ultimately a question of fact that need not be proved at the pleading stage. *Id.* Because
the Court finds that Showers has alleged a plausible claim for relief based on actual
authority and ratification, the Court need not determine whether Showers has adequately
pleaded apparent authority.

### B. Failure to State a Claim under 47 C.F.R. § 64.1200(c) and § 64.1200(d)

All Defendants next argue that Showers has failed to state a claim for violation of

Sections 227(b) and 227(c) of the TCPA as implemented by 47 C.F.R. § 64.1200(c)-(e).

Section 64.1200(c) states, in relevant part, that "[n]o person or entity shall initiate any telephone solicitation to: . . . (2) [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." Dimension, SunPath, and Pelican all argue that Showers has not alleged that she *personally* registered her phone number on the do-not-call registry, which, they assert, is fatal to her claim. Instead, the Amended Complaint states: "Plaintiff Showers' telephone number is included on the National Do-Not-Call Registry, and has been so registered since January 12, 2006." (Doc. 25 at ¶ 5).

Defendants cite a number of district court cases from outside the Seventh Circuit in support of their position, but the Court does not find these cases persuasive. And for good reason: Defendants are inserting an adverb into regulatory text that is not actually there. The regulation merely requires that a subscriber have registered his or her phone number on the do-not-call registry. There is no requirement that an individual have *personally* registered the phone number. *See Moore v. Healthcare Sols. Inc.*, No. 21-CV-4919, 2022 WL 17487823, at *5 (N.D. Ill. Dec. 7, 2022) ("The focus is on whether the number was registered, not who did the registration. The regulation protects numbers, not particular people. That's why the Registry includes numbers, not names."). Thus, Showers's claim under § 64.1200(c) will not be dismissed on this basis.[1]

---

[1] Mepco alternatively argues that Showers has not adequately pleaded the details regarding any phone calls that she received from Mepco, including the time, date, and number of calls, which itself is a basis for dismissal of her claim. As discussed above, however, Showers alleges that the parties acted in concert and,

The Court next turns to the argument by Dimension, SunPath, and Pelican that Showers has not stated a claim under 47 C.F.R. § 64.1200(d). That section requires telemarketers, among other things, to have a written policy for maintaining a do-not-call list, to record and honor do-not-call requests, and to maintain a list of and honor requests not to receive further telemarketing calls. *Bilek v. Nat'l Cong. of Emps., Inc.*, 470 F. Supp. 3d 857, 862 (N.D. Ill. 2020) (citing 47 C.F.R. § 64.1200(d)). Defendants contend that the Amended Complaint does not specify any request for Defendants' internal policies or any request that Showers be placed on their internal do-not-call lists. Defendants further argue that, even if Showers properly pleaded her cause of action, there is no private right of action under § 64.1200(d).

As an initial matter, while the Seventh Circuit has not decided the issue, "the Sixth and Eleventh Circuits have recognized a private right of action for violations of internal do-not-call list regulations," as have many district courts in this circuit. *Sorsby v. TruGreen Ltd. P'ship*, No. 20-CV-2601, 2020 WL 7641288, at *5 (N.D. Ill. Dec. 23, 2020); *see also Bilek*, 470 F. Supp. 3d at 862-63 ("Taken as a whole, section 64.1200(d) implements section 227(c)'s command to protect the privacy rights of telephone subscribers to avoid receiving telephone solicitations to which they object."); *Gill v. Align Tech. Inc.*, No. 21-CV-631-JPS-JPS, 2022 WL 1540016, at *2 (E.D. Wis. May 16, 2022) ("[B]ecause § 64.1200(d) reflects the concerns embraced by section 227(c)—*i.e.*, to protect consumers from phone solicitations to which they have already objected—it is reasonable to conclude that § 64.1200(d) was promulgated pursuant to § 227(c) and permits a private right of action

---

thus, Mepco may be liable under the theory of vicarious liability.

for violations."); *Moore v. Pro Custom Solar LLC*, No. 21 C 4395, 2022 WL 1092186, at \*5 (N.D. Ill. Apr. 12, 2022). This Court sees no reason to deviate from these well-reasoned decisions and, thus, finds that consumers have a private right of action for violations of § 64.1200(d).

Turning to the Amended Complaint, Showers alleges that Defendants do not have a "Do Not Call" database and do not have a "Do Not Call" policy that is written or in compliance with the National Do Not Call Registry. The Court agrees with Defendants that these allegations are nothing more than conclusory, formulaic recitations of the elements of the cause of action. Without additional facts in support, Showers has not raised her claim for relief above the speculative level. Accordingly, her claim under 47 C.F.R. § 64.1200(d) will be dismissed.

## IV.    Failure to State a Claim Under the ITSA

Under ITSA, a live operator soliciting the sale of goods or services must: (1) immediately state his or her name, the name of the business or organization being represented, and the purpose of the call; (2) inquire at the beginning of the call whether the person called consents to the solicitation; and (3) if the person called requests to be taken off the contact list of the business or organization, the operator must refrain from calling that person again and take all steps necessary to have that person's name and telephone number removed from the contact records of the business or organization. *Moore v. CHW Grp., Inc.*, No. 18-CV-6960, 2019 WL 3216029, at \*3 (N.D. Ill. July 17, 2019) (citing 815 ILCS 413/15(b)). ITSA also prohibits a telemarketer from obtaining or submitting for payment a check, draft, or other form of negotiable paper drawn on a

person's checking, savings, or other account or on a bond without the person's express written consent." 815 ILCS 413/25(c).

Defendants argue that Showers alleges, in a conclusory fashion, that Defendants' actions "constitute numerous violations" of ITSA without explaining whether a live operator placed the call or whether her consent was requested during the call. Defendants assert that numerous courts have dismissed ITSA claims when these details are missing.

The Court disagrees and finds that Showers has adequately pleaded a claim under ITSA. Showers alleges that the calls begin with a live operator who does not immediately state his or her name, nor the name of the business or organization being represented. (*Id.* at ¶ 21). The operator also misrepresents the purpose of the call by claiming they are selling "extended warranties," when they are really selling VSCs. (*Id.*). Showers further alleges that on August 4 and 5, 2022, she was solicited to pay money, and did pay money, to Defendants over the phone without express written consent. (Doc. 25 at ¶ 5). These factual allegations are sufficient to state a claim under ITSA.

## V.     Motion to Strike Class Definitions

Lastly, Dimension, SunPath, and Pelican have moved to strike the class definitions because they constitute fail-safe classes. A "fail-safe" class is one that is defined "so that whether a person qualifies as a member depends on whether the person has a valid claim. Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012). To avoid fail-safe problems, class membership should "not depend on the liability of the defendant."

*Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015).

> Here, Showers seeks to represent a nationwide class consisting of:

> All natural persons in the United States of America who, during the applicable statute of limitations, received a telephone call from Defendants that: (1) was initiated to a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government; and (2) was initiated at a time when the called party had not given Defendants prior express consent for such calls.

> She also intends to represent an Illinois subclass consisting of:

> All natural persons in the State of Illinois who, during the applicable statute of limitations, received a telephone call from Defendants wherein: (1) the live operator did not immediately state his or her name, nor the name of the business or organization being represented; (2) the live operator represented that they were soliciting "Extended Warranties;" and/or (3) the consumer made payment over the telephone without providing express written consent for the payment."

(Doc. 25 at ¶¶ 32-33).

The Court agrees these are fail-safe class definitions. With regard to the nationwide class, the class definition includes only those who had not given Defendants prior express consent to be contacted. Lack of consent is a requirement for liability under the TCPA, meaning the class, as defined, is an impermissible fail-safe class. *See Mauer v. Am. Intercontinental Univ., Inc.*, No. 16 C 1473, 2016 WL 4698665, at *3 (N.D. Ill. Sept. 8, 2016) (collecting cases and finding similar class definition to be fail-safe). Likewise, the Illinois subclass definition parallels the elements of an ITSA claim and, thus, is fail-safe. *See Tillman v. Ally Financial, Inc.*, 2016 WL 6996113 at *5 (M.D. Fla. Nov. 30, 2016) ("A fail-safe class is one whose definition incorporates the elements of a successful legal claim,

such that determining whether an individual or entity is a member of the class "front-ends a merits determination on [the defendant's] liability.").

Rather than strike the class definitions, however, the Court will permit Showers to amend her class definitions. Thus, Defendants' motion to strike is denied.

### CONCLUSION

For these reasons, the Motions to Dismiss filed by Defendants Sing For Service, LLC (Doc. 29), Pelican Investment Holdings Group, LLC (Doc. 30), SunPath, LTD (Doc. 33), and Dimension Service Corporation (Doc. 34) are **GRANTED in part and DENIED in part**. Plaintiff Angelina Showers's claim under 47 C.F.R. § 64.1200(d) is **DISMISSED without prejudice** for failure to state a claim.

Showers is **GRANTED** leave to file an amended complaint addressing the above deficiencies on or before **October 30, 2024**. A scheduling conference will be set by separate order.

**IT IS SO ORDERED.**

**DATED:   September 30, 2024**

_Nancy J. Rosenstengel_

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**