IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANGELINA SHOWERS, Individually and on behalf of others similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>PELICAN INVESTMENT HOLDINGS GROUP, LLC, DIMENSION SERVICE CORPORATION, and SING FOR SERVICE, LLP,<br><br>  Defendants. | Case No. 3:23-CV-02864-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Angelina Showers alleges that she received unsolicited and unwanted telemarketing calls even though her number is on a national Do Not Call ("DNC") list. She brings this action against Defendants Pelican Investment Holdings Group, LLC ("Pelican"), Dimension Service Corporation ("Dimension"), and Sing for Service, LLP, d.b.a. Mepco ("Mepco") (collectively "Defendants") alleging claims under federal and state law. On September 30, 2024, the Court partially granted Defendants' motions to dismiss Plaintiff's First Amended Complaint without prejudice. (Doc. 52). Plaintiff filed a Second Amended Complaint on October 16, 2024. (Doc. 56). Defendants now move for judgment on the pleadings as to the Second Amended Complaint. (Docs. 80, 81).

Plaintiff's Second Amended Complaint advances two causes of action: violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") (Count I), and violation of the Illinois Telephone Solicitations Act, 815 ILCS 413/1, *et seq.* ("ITSA")

(Count II). Defendants contend that Plaintiff cannot maintain a TCPA claim because her phone number is associated with a cell phone and thus ineligible for registration on the national DNC list. They also argue that their alleged use of automatic dialing technology is fatal to Plaintiff's claim under ITSA.

## BACKGROUND

The Court accepts the facts alleged in Plaintiff's Second Amended Complaint as true. *Pisciotta v. Old Nat. Bancorp.*, 499 F.3d 629, 633 (7th Cir. 2007).

Plaintiff alleges that Dimension, in concert with a company called Sunpath, Ltd.[1] ("Sunpath"), administered an "aggressive" telemarketing campaign to sell Vehicle Service Contracts ("VSCs") across the country, including in Illinois. (Doc. 56 ¶ 10 (Sec. Am. Compl.)). Pelican initiated and carried out these calls on Dimension's behalf, thus acting as Dimension's agent in the scheme. (*Id.*). Mepco acted as a payment processor, facilitating monthly premium payments from consumers for the VSCs they purchased. (*Id.* ¶ 11). As such, "[a]ll Defendants acted in concert and had full knowledge of the calling campaign, ratified it, and profited from it." (*Id.* ¶ 12).

Plaintiff's phone number (ending in 2903), which she uses for "residential purposes," has been on the national DNC list since 2006. (*Id.* ¶ 5). On August 4 and 5, 2022, however, she was contacted by Defendants (through Pelican), using an "automatic telephone dialing system" ("ATDS") and told she was eligible for an "extended warranty" on her car. (*Id.* ¶¶ 17, 19, 20). Through aggressive sales tactics,

---

[1] Sunpath was originally named as a Defendant in this action. Plaintiff dropped Sunpath from her Second Amended Complaint based on defense counsel's representation that it is no longer in business.

including demands to make an immediate purchasing decision or lose out on the opportunity, Defendants sold Plaintiff on a VSC, claiming it provided the "highest level" of coverage. (*Id.* ¶¶ 21, 22). Before ending the call, Defendants demanded that Plaintiff make an initial payment prior to sending any documentation of the transaction. (*Id.* ¶ 24). Pelican collected the initial payment from Plaintiff without her written consent; subsequent monthly premiums were collected by Mepco. (*Id.* ¶¶ 24, 25, 29).

Defendants allegedly did not cross-reference their call lists with the national DNC list. (*Id.* ¶ 38). As such, they "routinely" placed calls to people whose numbers were on the DNC list, including Plaintiff and the putative class members. (*Id.* ¶ 39).

Based on these allegations, Plaintiff seeks to represent a nationwide class of consumers and an Illinois subclass. (*Id.* ¶ 30). She defines the nationwide class as:

> [A]ll natural persons in the United States of America who, during the applicable statute of limitations, received a telephone call from Defendants that was initiated to a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government. (*Id.* ¶ 31).

The Illinois subclass is defined as:

> [A]ll natural persons in the State of Illinois who, during the applicable statute of limitations, received a telephone call from Defendants wherein: the live operator did not immediately state his or her name, nor the name of the business or organization being represented; the live operator represented that they were soliciting "Extended Warranties;" and/or the consumer made payment over the telephone. (*Id.* ¶ 32).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the

pleadings." Pleadings "include the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

"The only difference between a motion for judgment on the pleadings and a motion to dismiss is timing; the standard is the same." *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020). A motion for judgment on the pleadings may not be granted "unless it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its position." *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020). Thus, even with all facts and inferences viewed in the light most favorable to the nonmoving party, *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993), "the moving party must demonstrate that there are no material issues of fact to be resolved." *N. Ind. Gun & Outdoor Shows*, 163 F.3d at 452.

## DISCUSSION

1. Count I: Violation of the TCPA

Congress enacted the TCPA to address the "intrusive invasion of privacy," caused by "[u]nrestricted telemarketing." *Mims v. Arrow Fin. Servs, LLC*, 565 U.S. 368, 372 (2012) (quotation marks omitted). It found that "[m]any consumers [we]re outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers," and that "residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." TCPA, § 2, ¶¶ 6, 10, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings). The TCPA thus "protect[s] residential telephone subscribers'

privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

The TCPA's core substantive provisions appear in sections 227(b) and (c) of Title 47. As relevant here, section 227(b) prohibits people from "initiat[ing] any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(B). It also prohibits people from "mak[ing] any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." *Id.* § 227(b)(1)(A)(iii).

Subsection (c) empowers the Federal Communications Commission ("FCC") to "prescribe regulations" that "protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." *Id.* § 227(c)(1)-(2). To accomplish this goal, Congress anticipated that an effective regulatory framework "may require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations." *Id.* § 227(c)(3). So, "[r]ather than dictating the contents of the regulations—as Congress did in [s]ection 227(b)," section 227(c) permits the FCC to establish a national DNC list of phone numbers belonging to people who did not want to receive telemarketing calls. *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 201 (S.D.N.Y. 2024). And if the FCC determined that a national DNC database was necessary

(it did), then the regulations *must* "prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database." *Id.* § 227(c)(3)(F).

The TCPA's implementing regulations do just that. They forbid people from "initiat[ing] any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government"—*i.e.*, the DNC list. 47 C.F.R. § 64.1200(c)(2). The regulations also forbid anyone from initiating "any artificial or prerecorded-voice telephone call . . . or any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls." *Id.* § 64.1200(d). And section 64.1200(e) states that these rules "are applicable to any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02–278, FCC 03–153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991'" (the "2003 Report and Order"). The 2003 Report and Order conveys the FCC's finding that "it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections." *In re Rules and Regs. Implementing the Tel. Cons. Prot. Act of 1991*, 18 F.C.C.R. 14014, 14039 (2003). It further provides:

> As a practical matter, since determining whether any particular wireless subscriber is a "residential subscriber" may be more fact-intensive than making the same determination for a wireline subscriber, we will presume

wireless subscribers who ask to be put on the national do-not-call list to be "residential subscribers." Such a presumption, however, may require a complaining wireless subscriber to provide further proof of the validity of that presumption should we need to take enforcement action. *Id.*

Any person who receives more than one telemarking call in violation of the implementing regulations over a 12-month period may bring an action for injunctive and monetary relief. *Id.* § 227(c)(5). Plaintiff advances such an action under section 227(c) and the implementing regulations based on Defendants' calls to her and other phone numbers on the DNC list.

Defendants' dispositive argument turns on the phrase "residential telephone subscriber." As noted, the implementing regulations prohibit calls to "[a] *residential telephone subscriber* who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2) (emphasis added). Plaintiff's phone number (ending in 2903), however, is assigned to a *cell phone*—not a "landline."[2] Defendants point to section 227(b)'s express distinction between calls placed to a number assigned to a "cellular telephone service" (section 227(b)(1)(A)(iii)) and those placed to a "residential telephone line" (section 227(b)(1)(B)) to argue that Congress was aware of the difference between "residential" and "cell" phones and chose to regulate them differently. And because section 64.1200(c)(2), in turn, limits the DNC list to "residential telephone subscriber[s]," it must, according to Defendants, *exclude* cell phone

---

[2] The Court assumes for purposes of Defendants' motion that the number in question is indeed linked to a cell phone. Plaintiff did not dispute this characterization in her response brief.

numbers, like Plaintiff's.

The implementing regulations are clear in their scope. While subsection 64.1200(c)(2) forbids calls to numbers on the DNC list, subsection (e) extends that prohibition to "any person or entity making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers." These regulations were not drafted in a vacuum. Congress gave the FCC explicit directives to "prescribe regulations" that "protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1)-(2). And as the FCC executed its regulatory mandate, it found that "it is more consistent with the overall intent of the TCPA to allow wireless subscribers to benefit from the full range of TCPA protections." 2003 Report and Order, 18 F.C.C.R. at 14039. It also concluded that "wireless subscribers may participate in the national do-not-call list." *Id.*

A departure from these considered findings is not appropriate here. It is true that section 227(b) distinguishes calls based on the phone technology they target. 47 U.S.C. §§ 227(b)(1)(A)(iii), (b)(1)(B). Section 227(b)(1)(A) prohibits calls "using any automatic telephone dialing system or an artificial or prerecorded voice" to certain phone types (*e.g.*, emergency telephone lines and numbers assigned to a "cellular telephone service"). Section 227(b)(1)(B), on the other hand, prohibits calls "to any residential telephone line using an artificial or prerecorded voice." Thus, section 227(b) "forbids the use of artificial and prerecorded messages to enumerated categories of *phone technologies*." *Lirones v. Leaf Home Water Sols., LLC*, No. 5:23-cv-02087, 2024 WL 4198134, at *6 (N.D. Ohio Sept. 16, 2024) (emphasis added).

But section 227(c) "provides protections to a certain type of phone *user*, regardless of the technology." *Id.* (emphasis added). It directs the FCC to craft regulations that "protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). The FCC did exactly that by creating the DNC list and making it unlawful to initiate telemarketing calls to "residential telephone subscriber[s]" whose numbers are on it. 47 C.F.R. § 64.1200(c)(2). Defendants' argument overlooks this critical distinction. In their view, section 227(b)'s differential treatment of a "cellular telephone service" and a "residential telephone line" means that only residential "lines"—*i.e.*, landlines—are eligible for the DNC list, irrespective of section 227(c)'s concern for "subscribers" whose privacy it seeks to protect. This argument is hard to square with the text and structure of the TCPA, as the Southern District of New York recognized:

> Cellular telephones—like telephone lines, paging services, radio common carrier services, and telephone facsimile machines—are a kind of telephonic communications technology. A "residential subscriber," by contrast, does not refer to the specific phone technology, but to the type or identity of the subscriber to the technology. Thus, a "residential subscriber" and a cellular telephone are not members of the same genus.

*Cacho*, 739 F. Supp. 3d at 204-05. The distinction between telephone *technologies* in section 227(b) and telephone *subscribers* in section 227(c) matters because each section contains its own substantive requirements. And while section 227(b) distinguishes between calls to numbers assigned to a "cellular telephone service" and calls to "residential telephone lines," section 227(c) contains no such distinction. Instead, section 227(c) broadly protects "residential telephone *subscribers*" whose numbers are on the DNC list. Congress's use of

the phrase "residential telephone *line*" in section 227(b)(1)(B) indeed suggests that that section concerns itself with a "fixed line dedicated to a particular location"—*i.e.*, a landline. *Cacho*, 739 F. Supp. 3d at 205. But it is also notable that section 227(b)(1)(B) is the only provision in the TCPA that uses that phrase. "Had Congress wished to limit section 227(c) to specified telephone technologies rather than specified telephone subscribers, it would have indicated somewhere in that section that the [Do Not Call] registry is limited to a 'residential telephone line,' as Congress used that term in the preceding subsection." *Id.* (quotation marks omitted).

Congress's deliberate choice to address "residential telephone line[s]" exclusively in section 227(b)(1)(B) thus suggests that "residential telephone subscribers" under section 227(c) are entitled to their own protections. Indeed, section 227(b)(1)(A)(iii) shows that Congress knew how to separate cell phones from other phone technologies. The fact that it did not do so in section 227(c) supports the FCC's conclusion that the TCPA extends to "wireless subscribers" who use their cell phones for residential purposes—as Plaintiff did here. *See Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1226-27 (9th Cir. 2022) (Bress J., concurring) (endorsing FCC's statutory interpretation); *accord Wilson v. Hard Eight Nutr. LLC*, --- F. Supp. 3d ----, ----, 2025 WL 1784815, at *4 (D. Or. June 27, 2025) ("argu[ment] that a cell phone is not a residential telephone under the TCPA . . . relies on a strained apples-to-apples comparison of [s]ections 227(b) and 227(c)"); *Lirones*, 2024 WL 4198134, at *6 (holding that "omission of the word 'line' and use of the word 'subscriber' in § 227(c) . . . refers to the type of subscriber and the function for which the subscriber uses the phone rather than the type of technology.").

Defendants rely principally on cases from the Northern District of Illinois and the Eastern District of Wisconsin to claim that "[c]ourts within the Seventh Circuit adhere to the position that cellular telephones do not qualify as residential phones for purposes of establishing liability under the TCPA." (Def. Br., p. 9 (Doc. 80)). The first of these cases, *Moore v. Triump CSR Acquisition, LLC*, No. 23-cv-4659, 2023 WL 8601528, at *2 (N.D. Ill. Dec. 12, 2023), recognized that "[c]ourts widely hold that a cell phone is not a 'residential telephone line' within the meaning of subsection 227(b)(1)(B)." The plaintiff, however, alleged that she had received prerecorded telemarketing calls on her cell phone. *Id.* at *1. The court held that this allegation could not support a claim under section 227(b)(1)(B). *Id.* at *2. The problem was not that the plaintiff had no claim under the TCPA at all (as Defendants appear to suggest here); it was that her chosen theory of liability under subsection 227(b)(1)(B) required her to show that she had been called on a "residential telephone line." *Id.* Indeed, the plaintiff had previously dropped a claim under section 227(c)(5), alleging that the defendant had disregarded the DNC list. *Id.* at *1. So, by invoking subsection 227(b)(1)(B), the plaintiff exposed her claim to the requirement that the calls in question reached her via a "residential telephone line." Plaintiff's claims in this case, however, arise under 227(c) and its associated implementing regulations. *Moore* is thus not inconsistent with this Court's holding that people can register their cell phone numbers on the DNC list as "residential telephone subscribers" and invoke the protections of section 227(c) and 47 C.F.R. § 64.1200(c)(2) when telemarketers disregard their inclusion on the list.

The second case Defendants cite from within this circuit, *Kapp v. E. Wis. Water*

*Cond. Co.*, No. 20-CV-286, 2021 WL 778168, at *4 (E.D. Wis. Mar. 1, 2021), also does not help them. There, the defendants moved to strike a putative class action plaintiff's class definitions because he sought to represent a class of plaintiffs who received calls on their cell phones even though he had only received calls on his residential landline. *Id.* The defendants argued that the plaintiff was not an appropriate class representative for the cell phone class because the TCPA treated calls to him differently than those to people's cell phones. *Id.* The court recognized this distinction: "While the defendants cite many cases that support the proposition that cell phones and residential landlines are distinct under the TCPA, they need not: such a distinction is clear from the text of the statute." *Id.* The Court agrees with this articulation of the law insofar as it concerns section 227(b). But it does not support Defendants' contention that Plaintiff may not invoke the protections of the DNC list as a "residential telephone subscriber." Again, while section 227(b) distinguishes between calls to numbers assigned to "cellular telephone service[s]" and calls to "residential telephone line[s]," section 227(c) does not—its concern is the "residential telephone *subscriber*."

Finally, the Court's adoption of the FCC's determination that cell phone users may qualify as "residential telephone subscribers" under the TCPA is consistent with the Supreme Court's decision in *Loper Bright Enter. v. Raimondo*, 603 U.S. 369 (2024). Under *Loper*, judges must "exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Id.* at 412. This requires courts to scrutinize statutory delegations of "discretionary authority" to federal agencies to ensure that "the agency has engaged in reasoned decisionmaking within th[e] boundaries" of its

authority. *Id.* 395 (citation modified). And while "an agency's interpretation of a statute cannot bind a court, it may be especially informative to the extent it rests on factual premises within the agency's expertise." *Id.* at 402 (citation modified). "[J]udges need only fulfill their obligations under the [Administrative Procedures Act] to independently identify and respect such delegations of authority, police the outer statutory boundaries of those delegations, and ensure that agencies exercise their discretion consistent with the APA." *Id.* at 404.

Here, Congress's delegation of authority is clear. The FCC was directed to "prescribe regulations" that "protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C § 227(c)(1)-(2). These regulations, Congress predicted, "may require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations." *Id.* § 227(c)(3). The FCC did as it was instructed. It created the national DNC list and, in the 2003 Report and Order, articulated the presumption that "wireless subscribers who ask to be put on the national do-not-call list [are] 'residential subscribers.'" 2003 Report and Order, 18 F.C.C.R. at 14039. This determination "rests on factual premises within the agency's expertise." *Loper*, 603 U.S. at 402. And while that is not dispositive under *Loper*, it carries a "particular power to persuade." *Id.* Here, based on the Court's independent examination of the TCPA, it is persuaded that the FCC got it right—cell phone users may qualify as "residential subscribers" whose numbers may be added to the DNC list.

At this stage, the pleadings demonstrate a viable claim for relief. Discovery may

reveal evidence that undermines Plaintiff's assertion that she used her cell phone for "residential purposes." If that happens, Defendants may be able to rebut the presumption that her cell phone is not covered by the TCPA. But for now, the Court is satisfied that Plaintiff has stated a viable claim for relief under the TCPA.

2. Count II: Violation of ITSA

Defendants also contest Plaintiff's standing to bring an ITSA claim because the calls in question were allegedly made using an ATDS. Defendants are correct that ITSA, by its terms and subject to a limitation that is not currently relevant, "shall not apply to telephone calls made by an autodialer." 815 ILCS 413/20(a). Thus, they argue that Plaintiff pleaded herself out of court by claiming that they used an "automatic telephone dialing system" to call her.

The problem with Defendants' argument is that all of them have *denied* this allegation in the Second Amended Complaint. (Doc. 60, ¶ 17 (Mepco's Answ. to Sec. Am. Compl.), Doc. 61 ¶ 17 (Dimension's Answ. to Sec. Am. Compl.), Doc. 62 ¶ 17 (Pelican's Answ. to Sec. Am. Compl.)). "[W]hen material issues of fact are raised by the answer and the defendant seeks judgment on the pleadings on the basis of this matter, his motion cannot be granted." *Morse v. Raoul*, --- F. Supp. 3d ----, ----, 2025 WL 2576434, at *2 (S.D. Ill. Sept. 5, 2025) (quotation marks omitted). That is what happened here. By disputing Plaintiff's claim that they used an ATDS, Defendants put the issue in play. Discovery will help explain whether, and if so, how, Defendants relied on technology to place their calls. If such evidence is developed, Defendants may have a strong argument that their use of automated dialing technology is fatal to Plaintiff's ITSA claim. But on a Rule 12(c) motion,

only "*uncontested* allegations to which a party had an opportunity to respond are taken as true." *Flora v. Home Fed. Sav. & Loan Ass'n*, 685 F.2d 209, 211 (7th Cir. 1982) (emphasis added). Here, Plaintiff's allegation that Defendants used an ATDS to call her is contested. Thus, it cannot provide a basis for judgment on the pleadings. *See Pratt Logistics, LLC v. United Transp., Inc.*, No. 2:21CV148, 2022 WL 743049, at *5 (N.D. Ind. Mar. 10, 2022) (denying motion to dismiss because whether defendant's conduct violated statutory definition of prohibited conduct was question of fact).

## CONCLUSION

For these reasons, Defendants' Motion for Judgment on the Pleadings (Doc. 80) is **DENIED**. Mepco's Motion in Concurrence (Doc. 81) is **GRANTED** insofar as the Court has considered Mepco a proponent of the motion for judgment on the pleadings.

## NEXT STEPS

With this Order, the discovery stay issued on August 18, 2025 (Doc. 90) is **LIFTED**. The parties are **DIRECTED** to submit a proposed amended scheduling order for the case via email to njrpd@ilsd.uscourts.gov on or before **February 6, 2026**.

**IT IS SO ORDERED.**

DATED:  January 30, 2026

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**